73470. GARY L. SHAW BUILDERS, INC. v. STATE AUTOMOBILE MUTUAL INSURANCE COMPANY.
(355 SE2d 130)

McMURRAY, Presiding Judge.

State Automobile Mutual Insurance Company (State Automobile) initiated this declaratory judgment action seeking a determination as to whether it has a duty to defend Gary L. Shaw Builders, Inc. (Shaw Builders) in an action filed against Shaw Builders by James E. and Sheila M. Clark (Clarks).

In 1978 Shaw Builders constructed a house in Augusta, Georgia for Mr. & Mrs. Dick Rumbley (Rumbleys). Thereafter, a dispute arose between Shaw Builders and the Rumbleys concerning the structural integrity of the house. To resolve the dispute, Shaw Builders purchased the house from the Rumbleys on March 11, 1985. Shaw Builders then performed certain repairs on the house and, in April 1985 purchased a comprehensive general liability (CGL) insurance policy from State Automobile covering the house. (The CGL insurance policy was effective from February 7, 1985, to February 7, 1986.) On June 17, 1985, Shaw Builders sold the house to the Clarks and, in conjunction therewith, provided James E. Clark with the following express warranty: "STRUCTURAL WARRANTY . . . The undersigned seller [Shaw Builders] hereby warrants to James E. Clark that the dwelling located on the captioned property is structurally sound and in conformity with the VA/FHA published minimum property stan-

dards. Should the said James E. Clark notify seller, in writing, within one year of the date hereof as to any non-conformity with said standards then said seller shall be bound to correct any such non-conformity. This structural warranty shall be binding on the warrantor for one year from the date hereof and is limited to the structural integrety [sic] of the improvements only."

Shortly after the Clarks purchased the house, they complained to Shaw Builders of certain defects in the house and complained that they were not given full information concerning the prior defects in the house. In this regard, the Clarks sent Shaw Builders the following letter, in pertinent part, dated August 7, 1985: "It has come to our attention now that we were not informed by you . . . of all the problems the house had before we purchased it. We were told by our realtor there had only been a water problem, a pipe had broken and now had been repaired. We were not told that part of the house had actually shifted because of the foundation sinking, until after we had purchased the house. The house is not level, the front of the house slopes downward. The kitchen and utility room floors are very bad, they are uneven and floor joists are appearing in several places on the floor. The refrigerator is actually slipping towards the front of the house and the microwave oven also slopes. We expect the floors levelled [sic] and corrected in accordance with your warranty given with the purchase of the house. Would you please contact us regarding these problems." There was no resolution of this claim and the Clarks brought an action against Shaw Builders in a three-count complaint.

Count 1 of the complaint is based on breach of the express warranty given to James E. Clark by Shaw Builders. Count 2 is based on fraud, in that Shaw Builders willfully and knowingly concealed structural defects in the house, thereby fraudulently inducing the Clarks to purchase the house; and, Count 3 is based on negligent construction and design of the house.

Shaw Builders demanded State Automobile to defend it in the action brought by the Clarks and to pay damages that may be recovered by the Clarks against Shaw Builders. In response, State Automobile denied liability under the CGL insurance policy and filed this declaratory judgment action. Subsequently, State Automobile moved for summary judgment and, after a hearing, the trial court entered, in pertinent part, the following order: "The subject policy contains the following exclusions to coverage: This insurance does not apply . . . (n) to property damage to the named insured's products arising out of such products or any part of such products; (o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, . . . The language of these exclusions is clear and unambiguous. The comprehensive general liability policy is not intended to insure against defective workmanship causing dam-

age to the work product itself. . . . As to the Clarks' claim for fraudulent misrepresentation, the subject policy provides coverage only for an 'occurrence,' which is defined as 'an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.' The Georgia Courts have uniformly held that intentional or non-accidental damages are not covered under such a provision. *Georgia Farm Bureau Mutual v. Meriwether*, 169 Ga. App. 363 (1983); *Thrift-Mart, Inc. v. Commercial Union Assurance Cos.*, 154 Ga. App. 344 (1980). Based on the foregoing findings of fact and conclusions of law, IT IS HEREBY ORDERED that the Motion of [State Automobile] for summary judgment is hereby granted, and that a declaratory judgment of no coverage is granted in favor of [State Automobile.] . . ." It is from this order that Shaw Builders appeals. *Held*:

1. In its first enumeration of error Shaw Builders contends the trial court erred in granting summary judgment to State Automobile as "[a] genuine issue of material fact exists as to the extent of coverage for foundation work . . ." because the record shows that an agent for State Automobile " 'advised Shaw Builders that the policy contained coverage for certain types of damage arising from foundation work . . .' "

Where an insurance policy is unambiguous, parol evidence as to what was said by parties at the time application for the policy was taken is inadmissible to vary or alter the terms of the policy. *Fowler v. Liberty Nat. Life Ins. Co.*, 73 Ga. App. 765, 770-771 (4) (38 SE2d 60). In the case sub judice, subsections (n) and (o) of the section entitled "Exclusions" in the CGL insurance policy, as set forth in the trial court's order, clearly and unambiguously exclude coverage for property damage resulting from the insured's negligently constructed work product. See *Weedo v. Stone-E-Brick, Inc.*, 81 N. J. 233, 245 (405 A2d 788). Consequently, the trial court did not err in granting summary judgment in favor of State Automobile with regard to Count 3 of the Clarks' complaint.

2. Shaw Builders contends in its second enumeration of error that the trial court erred in granting summary judgment to State Automobile finding that exclusions (n) and (o) of the CGL policy applied with regard to the Clarks' claim for breach of warranty because the CGL policy provides specific coverage for the insured's work product where the insured has given an express warranty of the quality of the work performed and the product produced therefrom. In support of this contention, Shaw Builders points to exclusion "(a)" of the policy, which provides: "This insurance does not apply . . . to liability assumed by the insured under any contract or agreement except an incidental contract; *but this exclusion does not apply to a warranty of*

*fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner."* (Emphasis supplied.)

Notwithstanding the language of exclusion (a), State Automobile argues that exclusions (n) and (o) "preclude coverage for claims arising out of the 'structural warranty.' " In rebuttal, Shaw Builders argues that exclusions (n) and (o) do not preclude coverage for its alleged faulty workmanship under the warranty it issued to James E. Clark because there exists an apparent ambiguity between exclusions (n) and (o) and the emphasized language of exclusion (a). Citing OCGA § 13-2-2 (5); *Davis v. United American Life Ins. Co.,* 215 Ga. 521 (2) (111 SE2d 488); and *American Cas. Co. v. Callaway,* 75 Ga. App. 799 (1) (44 SE2d 400), Shaw Builders contends that this ambiguity must be construed in its favor.

At the outset, we note that "[e]xclusion (a) has been included in substantially the same form in many comprehensive liability insurance policies issued in this country in recent years." *Bond Bros. v. Robinson,* 393 Mass. 546, 548 (471 NE2d 1332). In addressing the same argument asserted by Shaw Builders, there has been a split among jurisdictions in determining whether an insurer has a duty to defend under circumstances analogous to the case sub judice. See Note 1 in *Stillwater Condominium Assn. v. American Home Assur. Co.,* 508 FSupp. 1075, 1077 (D. Montana 1981), affirmed, 688 F2d 848 (9th Cir. 1982), cert. denied, 460 U. S. 1038 (103 SC 1429, 75 LE2d 789). "The majority view holds that [there is no ambiguity because the overriding] purpose of this comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product." *LaMarche v. Shelby Mut. Ins. Co.,* 390 S2d 325, 326 (Sup. Ct. Fla. 1980). A minority of jurisdictions "essentially take the view that exclusion (a), in the face of another exclusion denying coverage for a loss 'within' the exception to exclusion (a), creates an ambiguity justifying coverage: [Cits.]" *Bond Bros. v. Robinson,* 393 Mass. 546, 551, supra.

In the case sub judice, we adopt the majority view which is clearly enunciated in *Weedo v. Stone-E-Brick, Inc.,* 81 N. J. 233, supra, where the Supreme Court of New Jersey said "[b]ecause we are of the view that exclusion '(a)' cannot serve to becloud the clear import of the 'business risk' exclusions, [exclusions (n) and (o) of the CGL policy in the case sub judice,] we necessarily disagree that an ambiguity exists in the policy before us. We have only recently reaffirmed the view that only genuine ambiguities engage the so-called 'doctrine of ambiguity,' [cit.]; and without intending in any wise to undercut the salutary effects of this 'doctrine,' we observe that it is, and indeed always has been, one of construction, simply an aid to the

proper interpretation of terms devised by the professional underwriter. . . . [S]uch an aid 'usually serves to describe a result rather than to assist in reaching it.' [Cit.]

"We conceive a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage. In that instance, application of the test of the objectively reasonable expectation of the insured often will result in benefits of coverage never intended from the insurer's point of view. The benefits granted, however, will pertain to the same landscape of risk as contemplated by the policy in issue, that is, the 'doctrine of ambiguity' works to effectuate the consumer's expectation that the policy purchased extended greater coverage in the particular underwriting area. The rule of construction embraces ambiguities which are artificial, however, when the reading of coverage urged by the insured affords indemnity in an area of insurance completely distinct from that to which the policy applies in the first instance. [sic.] To use an extreme example, no amount of semantical ingenuity can be brought to bear on a fire insurance policy so as to afford coverage for an intersection collision. Such an interpretation of a fire policy would hardly be based on any 'objectively reasonable' expectation. [Cit.]" *Weedo v. Stone-E-Brick, Inc.*, 81 N. J. 233, 246-247, supra.

In *LaMarche v. Shelby Mut. Ins. Co.*, 390 S2d 325 supra, the Florida Supreme Court reached the same conclusion, when confronted with the issue asserted by Shaw Builders in the case sub judice, holding that "[t]o interpret the policy as providing coverage for construction deficiencies, as asserted by the petitioners and a minority of states, would enable a contractor to receive initial payment for the work from the homeowner, then receive subsequent payment from his insurance company to repair and correct deficiencies in his own work. We find this interpretation was not the intent of the contractor and the insurance company when they entered into the subject contract of insurance, and the language of the policy clearly excludes this type of coverage. Rather than coverage and payment for building flaws or deficiencies, the policy instead covers damage caused by those flaws. We agree with the explanation of this type of coverage as stated by the Supreme Court of New Jersey in *Weedo v. Stone-E-Brick, Inc.*, 81 N. J. 233, 405 A2d 788 (1979), in which it said: An illustration of this fundamental point may serve to mark the boundaries between 'business risks' and occurrences giving rise to insurable liability. When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automo-

bile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case. 405 A2d at 791-92." *LaMarche v. Shelby Mut. Ins. Co.*, 390 S2d 325, 326-327, supra.

Consequently, in the case sub judice, for the reasons expressed above, we find the trial court did not err in granting summary judgment in favor of State Automobile with regard to its responsibility to defend Shaw Builders as to the Clarks' claim for breach of warranty.

3. In its third and fourth enumerations of error Shaw Builders contends the trial court erred in granting summary judgment in favor of State Automobile because the CGL insurance policy provides coverage for "products hazard" and "collapse hazard," as these terms are defined in the policy. We do not agree.

The damages alleged to have occurred by the Clarks are as a result of work performed and the product produced by Shaw Builders. Damages arising from such work or work product are specifically excluded from coverage under exclusions (n) and (o) of the policy. See Division 1 of this opinion. Consequently, these enumerations of error are without merit.

4. There is another reason the trial court properly granted summary judgment in favor of State Automobile. The CGL insurance policy further provides: "This insurance does not apply . . . to property damage to premises alienated by the named insured arising out of such premises or any part thereof." "Because [Shaw Builders] had already alienated the premises by the time damages were incurred, the insurance policy afforded no coverage for defending the action for damages asserted by the [Clarks]." *Wilmington Island Constr. Co. v. Cincinnati Ins. Co.*, 179 Ga. App. 477 (1), 478 (347 SE2d 308).

*Judgment affirmed. Carley and Pope, JJ., concur.*

DECIDED MARCH 18, 1987.

*James B. Wall*, for appellant.

*J. Arthur Davison, Percy J. Blount, William C. Reed*, for appellee.