A97A0755. SAPP v. STATE FARM FIRE & CASUALTY COMPANY.
(486 SE2d 71)

ELDRIDGE, Judge.

This is a declaratory judgment proceeding initiated by appellee State Farm Fire & Casualty Company to determine its obligation to provide a defense or coverage to Don W. Day Construction Company, Inc. and/or Don Day ("defendants Day") and third-party beneficiary rights of appellant Gerald L. Sapp, M.D. under a Contractor's Policy No. 91-33-9363-6 ("State Farm policy"). The litigation underlying this declaratory judgment proceeding was brought by appellant Sapp against Don Day and Bruce Hardwood Floors, a division of Triangle Pacific Corporation ("Bruce Hardwood Floors"); Bruce Hardwood Floors is not a party to the declaratory judgment action from which this appeal arises. The underlying civil action is premised upon allegedly negligent repairs and/or renovations made by defendants Day to appellant's home in Tifton, Tift County, Georgia.

On or about December 1, 1991, appellant employed defendants Day to conduct repairs and renovations to his home. As part of these renovations, defendants Day made repairs to the floor joist and installed approximately 2,800 square feet of hardwood flooring throughout the home. A portion of the work consisted of preparation of the crawl space, installation of drain tile, removal of water-

damaged material under the home, and preparation of the home to provide adequate ventilation and moisture barriers. This particular work was to be performed to protect the hardwood flooring from a moisture problem under the home.

A few weeks after installation, the hardwood floor began to "cup" or "warp," and eventually the hardwood floor had to be removed. On February 22, 1994, appellant filed a civil action, which was the underlying litigation to the case sub judice, against defendants Day and Bruce Hardwood Floors. Appellant sought recovery for the negligent installation of the hardwood floor, negligence in recommending what type of flooring should be installed, the costs of removing and replacing the flooring, and the costs of placing his home in the condition it was prior to removing and replacing the hardwood flooring.

On April 29, 1994, appellee filed this action for declaratory judgment, and on August 24, 1994, appellee filed a motion for summary judgment, which was granted by the trial court. It is from the trial court's order granting summary judgment that appellant Sapp appeals.[1]

Appellant's first enumeration of error asserts that the trial court erred in granting summary judgment in favor of the appellee. Appellant's enumerations of error 2 through 5 are sub-allegations of this primary enumeration and delineate the reasons the trial court erred in granting summary judgment in favor of the appellee. We affirm the trial court's ruling and address each of the appellant's sub-allegations as follows:

(a) Appellant asserts that the trial court erred in holding that defendants Day "did not have a reasonable expectation of coverage due to the ambiguities created by appellee in its policy of insurance issued to him." We disagree.

"In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms. [Cit.]" *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 614 (299 SE2d 561) (1983). "Although the provisions of an insurance policy will be construed against the insurer when a part is susceptible of two constructions and a court will adopt that interpretation which is most favorable to the insured, if the language is unambiguous and but one reasonable construction is possible, the court will enforce the contract as written. Interpretation of policy provisions which are plain and definite is a matter of law for the trial court, and a policy provision is not ambiguous even though presenting a question of construction, unless and until an application of the pertinent rules of con-

---

[1] Originally, defendants Day also filed a notice of appeal from the trial court's grant of summary judgment. However, this notice of appeal was dismissed by these appellants on December 9, 1996.

struction leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties." (Citations and punctuation omitted.) *Auto-Owners Ins. Co. v. Barnes*, 188 Ga. App. 439, 441 (1) (373 SE2d 217) (1988).

The declaration pages of the State Farm policy describe the "schedule" or "description" of the various construction operations of the named insured, Don W. Day Construction Company, Inc., and identifies the premiums by category of contractor's operations associated with the risks insured against. Such declaration pages provide that appellee "will provide the insurance described in the policy in return for the premium and compliance with all applicable provisions of this policy," and thereafter, on two pages entitled "Supplemental Declarations, Schedule of Contractors Operations 05-01-92," a description of the operations of the insured is set forth in some detail.

"It is well established that under the rules of contract construction, a limited or specific provision will prevail over one that is more broadly inclusive." (Citations and punctuation omitted.) *Auto-Owners Ins. Co.*, supra at 441 (1). The State Farm policy contains the following exclusions to coverage: "this insurance does not apply . . . 11. to property damage to . . . e. that particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the property damage arises out of those operations; or f. that particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it[;] [t]his part of this exclusion does not apply to property damage included in the products-completed operations hazard[;] . . . 12. to property damage to your product arising out of it or any part of it; 13. to property damage to your work arising out of it or any part of it and included in the products-completed operations hazard[;] . . . 14. to property damage to impaired property, or property that has not been physically injured, arising out of: a. a defect, deficiency, inadequacy or dangerous condition in your product or your work; or b. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms[;] . . . 15. to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: a. your product; b. your work; or c. impaired property; if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it. . . ." The language of exclusions 11. e., 11. f., 12, 13, 14, and 15 is clear and unambiguous, and such exclusions are what are generally known as "business risk" exclusions that are designed to exclude coverage for defective workmanship by the insured builder causing dam-

age to the construction project itself. *Gary L. Shaw Builders v. State Auto. Mut. Ins. Co.*, 182 Ga. App. 220, 223 (355 SE2d 130) (1987); *Elrod's Custom Drapery &c. v. Cincinnati Ins. Co.*, 187 Ga. App. 670 (371 SE2d 144) (1988). The declaration pages do not purport to modify or replace any of the "business risk" exclusions of the State Farm policy. Clearly, there are no genuine ambiguities in the declaration pages of the State Farm policy or in the "business risk" exclusions of the State Farm policy, and there could not be any "objectively reasonable" expectation on the part of the insured that coverage for defective workmanship by the insured builder which caused damage to the construction project itself was provided under the policy. See *Gary L. Shaw Builders,* supra. Therefore, this enumeration of error is without merit.

(b) Appellant alleges that the trial court erred in holding that an ambiguity did not exist regarding the definition of "your work" under the terms of the policy, as it is applied in this litigation.

"Your work" is defined under the State Farm policy as: "(1) work or operations performed by you or on your behalf; and (2) materials, parts or equipment furnished in connection with such work or operations." It is undisputed that the "work" performed by defendants Day included the investigation of and repairs to the floor joists and structures supporting the floor and frame for the appellant's house, preparation of the crawl space, installation of drain tile, removal of water-damaged material from under the house, preparation of the home to provide adequate ventilation and moisture barriers regarding the moisture problem under the house, and installation of approximately 2,800 square feet of hardwood flooring throughout the home. In addition, appellant, in his complaint in the underlying litigation, specifically asserted negligence against defendants Day for supplying materials to appellant while knowing of a moisture problem which existed under appellant's house; failing to warn appellant of the problems which could result when the flooring material furnished to appellant was exposed to moisture; installing the flooring without adequately protecting it from the moisture; and using flooring material that was defective and not suitable for the purpose for which it was intended and represented to be suitable. It is apparent that defendants Day's work was everything performed by defendants Day regarding appellant's new oak floor, and appellant's argument that the only "work" that would fall under the "business exclusions" of the State Farm policy would be the failure of defendants Day to address and correct the water problem under appellant's house prior to installing the hardwood floor is without merit.

There are two kinds of risks that are incurred by a contractor. "The first is the business risk borne by the contractor to replace or repair defective work to make the building project conform to the

agreed contractual requirements. This type of risk is not covered by the [State Farm] policy, and the 'business risk' exclusions in the policy make this clear. The second is the risk that the defective or faulty workmanship will cause injury to people or damage to other property. Because of the potentially limitless liability associated with this risk, it is the type for which CGL [commercial general liability] coverage is contemplated. While it may be true that the same neglectful craftsmanship can be the cause of both a business expense of repair and a loss represented by damage to persons and property, the two consequences are vastly different in relation to sharing the cost of such risks as a matter of insurance underwriting. The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or *damage to property other than to the product or completed work itself,* and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. *This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against.* The coverage applicable under the CGL policy is for tort liability for injury to persons and damage to *other* property[,] and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." (Citations and punctuation omitted; emphasis supplied.) *Glens Falls Ins. Co. v. Donmac Golf Shaping Co.,* 203 Ga. App. 508, 511 (417 SE2d 197) (1992).

A simple examination of appellant's complaint and his affidavit attached to his response to appellee's motion for summary judgment makes it clear that all his claimed damages relate directly to the cost of repairing or replacing the alleged negligent work of defendants Day, i.e., the failure to correct the moisture problem and the negligent installation of the hardwood floors. Any damages to the house during the removal of the hardwood floor and the restoration of the house to the condition it was prior to defendants Day's work were merely incidental to his claimed damages that defendants Day negligently performed the services for which appellant contracted. See *Reliance Ins. Co. v. Povia-Ballantine Corp.,* 738 FSupp. 523 (S.D. Ga. 1990).

(c) Appellant also alleges that the trial court erred in holding that the consequential damages alleged in the negligent actions of defendants Day did not fall within the parameters of *Glens Falls Ins. Co.,* supra. We disagree.

On the issue of consequential damages, the case sub judice can

be distinguished factually from *Glens Falls Ins. Co.* In *Glens Falls Ins. Co.*, "[t]he complaint by the developer is not that Donmac failed to construct the project in a workmanlike manner according to the specifications provided to it, but that it negligently built part of the project on federally protected wetlands. . . . The suit proceeds from the premise that the project has been built, the damage done, and the developer is entitled to reimbursement for damages incurred as a result of the alleged negligence. In seeking recovery for expenses of restoration and preservation of damaged wetlands at the project site, purchase and restoration of off-site wetland areas, elimination of certain encroaching areas of the project, and the resulting diminution in the fair market value of the property, the developer seeks recovery for damages over and above the scope of the benefits it contracted for with Donmac. Compare *Reliance Ins. Co. v. Povia-Ballantine Corp.*, [supra] (discussing *Gary L. Shaw*, supra, and *Elrod's*, supra, and finding no coverage under [the] CGL policy where all the claimed damages related directly to repairing or replacing the insured's defective work); *Elrod's*, supra at 671 (no coverage under the CGL policy because damages sought arose exclusively from insured's faulty workmanship). For example, in *Reliance Ins. Co.* the damage sought was return of the purchase price and related expenses on a condominium defectively constructed by the insured. In *Elrod's* the insured manufactured and sold defective fabric to a business which sued the insured for damages, including lost profits, after its customers rejected the fabric. In *Gary L. Shaw* the contractor, who was insured under a CGL policy, was sued for the correction of defects in the insured's construction of a house. In the three previous cases, in which no CGL coverage was found, the damages sought against the insureds were all directly related to correcting or repairing their deficient work or product. In this sense the damages were calculated to make good the contractual promises made by the insureds to the plaintiffs and were within the scope of those contractual expectations. By contrast, the damages sought by the developer against Donmac are not directly related to the cost of repairing and replacing deficiencies in Donmac's work on the project — and therefore excluded from the CGL coverage as business risks — but rather are claims beyond the scope of the contractual expectations for additional tort damages caused by the alleged deficiencies in Donmac's performance." *Glens Falls Ins. Co.*, supra at 512-513.

In comparison, as set out in section (b) herein, the damages in the case sub judice relate directly to the cost of repairing or replacing the alleged negligent work of defendants Day, or are merely incidental thereto. Appellant's enumeration of error is without merit.

(d) In appellant's final sub-allegation of error he alleges that the trial court erred in holding that a factual issue did not exist regard-

ing whether the agent from whom defendant Don Day purchased his CGL policy acted in a dual capacity.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Fred D. Horne, the insurance agent who sold the CGL policy of insurance to defendants Day, held himself out as an agent for State Farm Insurance Company ("State Farm"). Horne was being utilized at the time by defendant Don W. Day for procuring insurance needed by his corporation. According to Day, Fred D. Horne contacted him as President of defendant Don W. Day Construction Company, Inc. and advised him that State Farm had come out with a contractor's policy of insurance which Horne highly recommended for his company. Therefore, this Court, in reviewing the trial court's grant of summary judgment to State Farm, must view this evidence in the light most favorable to the appellant and presume that a dual agency existed.

In sections (a) and (b) herein, this Court found that the State Farm policy was clear and unambiguous, and that the "business risk" exclusions in the policy excluded from coverage the defective workmanship by the insured builder causing damage to the construction project itself. "Where an insurance policy is unambiguous, parol evidence as to what was said by parties at the time application for the policy was taken is inadmissible to vary or alter the terms of the policy. [Cit.]" *Gary L. Shaw Builders*, supra at 222 (1). Further, " '[t]he doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, or its agent, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom. (Cits.)' " *Lumber Transport v. Intl. Indem. Co.*, 203 Ga. App. 588, 590 (2) (c) (417 SE2d 365) (1992); *Cole v. State Farm Mut. Auto. Ins. Co.*, 135 Ga. App. 557, 558 (3) (218 SE2d 279) (1975). Therefore, any assertions by Horne that the policy gave defendants Day full coverage against any claim for personal injury or property damage arising out of the construction by Don W. Day Construction Company, Inc., its officers, or directors, would not extend additional coverage to defendants Day beyond what was given by the clear, plain, and unambiguous wording of the policy.

Further, the fact that defendants Day may have requested "full coverage" from Horne does not change this result. "The insured was not only free to examine the contract, he was under a duty to do so, and if he had done that he would have observed just what coverage it provided to him. If it was not what he wished to have he could have renegotiated his contract, or, if the company was unwilling to do that, he could have returned it as unacceptable and negotiated a con-

tract with another company." *Parris & Son, Inc. v. Campbell*, 128 Ga. App. 165, 173 (196 SE2d 334) (1973); *Hartford Ins. Co. &c. v. Franklin*, 206 Ga. App. 193 (424 SE2d 803) (1992); *Savannah Laundry &c. Co. v. Home Ins. Co.*, 189 Ga. App. 420 (376 SE2d 373) (1988); *Barnes v. Mangham*, 153 Ga. App. 540 (265 SE2d 867) (1980).

Defendant Don Day, who admits he examined the subject policy, had a duty to determine what coverage it provided and if the coverage was not correct, either reject the policy as written when it was tendered to him or renegotiate the contract with the insurer. There is no evidence that Horne intentionally misrepresented the existence or extent of coverage or that defendants Day were required to rely on the expertise of Fred D. Horne, if any, to identify and procure the correct amount or type of insurance. If defendant Don Day could not personally understand the clear and unambiguous exclusions in Section II of the State Farm policy, then he was under a duty to seek further assistance or counsel in determining exactly what coverage he was in fact receiving. To find differently would allow any insured to assert that he personally did not understand the terms of an insurance policy after he read them and, thereby, expand the policy to unconscionable limits beyond the clear and unambiguous terms of the contract of insurance.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED APRIL 17, 1997.

Before Judge Forehand.

*Simpson, Gray & Cross, Ralph F. Simpson, Melanie Barbee-Cross*, for appellant.

*Gardner, Willis, Sweat & Goldsmith, Donald A. Sweat*, for appellee.