### A97A0704. CANAL INDEMNITY COMPANY v. BLACKSHEAR FARMERS TOBACCO WAREHOUSE, INC.

(490 SE2d 129)

SMITH, Judge.

Blackshear Farmers Tobacco Warehouse (Blackshear) filed a complaint for damages against Rick Riner d/b/a Commercial Waterproofing Insulation, alleging that Riner negligently failed to repair the roof on Blackshear's warehouse. Canal Indemnity Company, which had issued a comprehensive general liability policy to Riner, then initiated this action against Riner and Blackshear, seeking a declaration of its rights and obligations.[1] The trial court granted summary judgment to Blackshear and denied summary judgment to Canal, concluding that Canal's policy provided coverage for the work performed by Riner. This appeal by Canal ensued. We agree with Blackshear that coverage exists for property stored inside the warehouse damaged as a result of Riner's alleged negligence. We do not agree, however, that coverage exists for damages for the work performed by Riner. We therefore affirm in part and reverse in part.

1. Canal first maintains that the policy does not provide coverage for Riner's work. Riner testified during his deposition that he installed and repaired a portion of Blackshear's wind-damaged roof; he described the process used as being a synthetic "insulated roofing system." It is not disputed that Riner applied the roofing materials by using a technology involving mixing, heating, and spraying two chemical components onto the roof. According to Riner, he repaired only a section of the roof because Blackshear's insurance company would not pay the full amount required to repair the entire roof. After Riner completed the repairs, the roof expanded and contracted, causing the repaired portion to open up and allow water into the

---

[1] The underlying complaint was stayed by the trial court pending resolution of the declaratory judgment action. Riner is not a party to this appeal; as noted by the trial court in its order staying the action for damages, Riner failed to answer the complaint for declaratory judgment.

warehouse. Blackshear's complaint sought recovery from Riner for damage to both the roof and contents of the warehouse caused by the leakage.

Under the terms of Riner's policy, covered hazards are described exactly as follows:

INSULATION — EXCLUDING ASBESTOS
INCLUDING COMPLETED OPERATION
PAINTING RESIDENTIAL AND
COMMERCIAL BUILDINGS — EXTERIOR
INCLUDING COMPLETED OPERATION
INCLUDING SPRAYING OPERATIONS
NO MORE THAN ONE STORY.

Canal contends that Riner's work was not covered because the term "spraying operations" applies only to painting, not to insulation. We disagree.

It is not clear, as argued by Canal, that the term "including spraying operations no more than one story" applies only to painting. That phrase *could* modify painting operations, but it could also modify both spray painting and the spray application of insulation. When a provision of a policy is susceptible of more than one meaning, even if each meaning is logical and reasonable, that provision is ambiguous. *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996). And we must construe such contracts against the insurer and in favor of the insured. Id. We conclude therefore that coverage was afforded for insulation involving spraying operations.

As for Canal's argument that spraying operations are specifically excluded by a later endorsement, that endorsement recites: "It is hereby understood and agreed that this policy does not provide any insurance for any claims arising from spraying operations." We do not agree, however, that the endorsement excludes coverage in this instance. Canal's policy specifically provides coverage for "completed operations." A "completed operations hazard" as defined by the policy "includes . . . property damage arising out of operations . . . if the . . . property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured." It is apparently undisputed that Riner repaired only a portion of the roof and completed his work before the damage occurred. Although the insurance policy clearly excludes all spraying operations from coverage, it covers completed operations. "Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms. [Cit.]" *Hurst* at 716 (4). Here, the "plain and unambiguous terms" of the contract clearly include completed operations. Although spraying

operations are excluded from coverage, *completed* operations are not. Had the drafters wished to exclude completed spraying operations from coverage, they could have done so.

2. Canal also contends that coverage for the damages claimed by Blackshear is excluded by the following language in the policy: "This insurance does not apply . . . to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of material, parts or equipment furnished in connection therewith." We disagree, but only in part.

In *Gary L. Shaw Builders v. State Auto. Mut. Ins. Co.*, 182 Ga. App. 220 (355 SE2d 130) (1987), this Court adopted the majority view concerning interpretation of this language — that it excludes property damage for replacement and repair of a defective product, but not for property damage *caused* by the completed product. Id. at 223. "Rather than coverage and payment for building flaws or deficiencies, the policy instead covers damage caused by those flaws." (Citation and punctuation omitted.) Id. at 224. In a comprehensive general liability policy, such exclusions from coverage for property damage "are generally referred to as 'business risk' exclusions, and are designed to exclude coverage for defective workmanship by the insured causing damage to the project itself." *Glens Falls Ins. Co. v. Donmac Golf Shaping Co.*, 203 Ga. App. 508, 511 (417 SE2d 197) (1992). The risk that defective or faulty workmanship will damage other property "is the type [of risk] for which [comprehensive general liability] coverage is contemplated. [Cit.]" Id.

Here, Blackshear sought coverage for two distinct types of property damage: (1) damage to the tobacco stored inside the warehouse; and (2) damage to the warehouse's roof caused by improper repairs. Damage to the tobacco was that type of risk intended for coverage — damage to property caused by defective workmanship in repairing the roof. See *Gary L. Shaw Builders*, supra; *Glens Falls Ins. Co.*, supra. The policy language excludes only property damage to the insured's own work, not damage to other property arising from alleged improper work. Insofar as Blackshear sought coverage for damage to the tobacco stored inside the warehouse, Canal insured that risk.

The extent of coverage concerning the roof damage is less clear however. The entire roof was allegedly damaged. As for that portion of the roof repaired by Riner, Canal is not obligated to provide coverage. The policy clearly excludes coverage for "property damage *to work performed by* or on behalf of the named insured." But damage *caused* by the work is not excluded. Thus, to the extent that Riner's work caused additional damage to the remaining portions of Blackshear's roof, Canal is obligated to cover that damage. Jury issues

exist as to the amount of damage to the roof not repaired by Riner.[2] The trial court's order granting summary judgment to Blackshear must therefore be reversed.

3. Blackshear does not dispute that liability coverage for punitive damages is not provided by the policy. That portion of the trial court's order denying summary judgment to Canal as to coverage for punitive damages must also be reversed.

*Judgment affirmed in part and reversed in part. Andrews, C. J., Birdsong, P. J., McMurray, P. J., Ruffin and Eldridge, JJ., concur. Beasley, J., concurs in part and dissents in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

I concur in the opinion except for the holding, in Division 2, that "[a]s for that portion of the roof repaired by Riner, Canal is not obligated to provide coverage."

Earlier in that division, the majority finds the policy's intent is to provide coverage for "damage to property caused by defective workmanship in repairing the work" and to exclude "only property damage to the insured's own work." Blackshear's underlying complaint alleges that Riner's negligence caused "significant and substantial damages" to the roof of Blackshear's tobacco warehouse. It alleges that flaws in the repair caused damages to the roof.

Riner repaired the roof, or attempted to do so, by spraying a urethane in liquid form on a section of the existing metal roof and on certain other spots where there were joints and seams. It was to insulate and seal the roof so it would no longer leak. The whole roof was not similarly covered with the urethane because of the limit on insurance funds available for the project. Riner testified that after he applied the urethane, the roof expanded and contracted and popped open one of the sections so water got in.

Griffis, one of the principals in Blackshear, testified that Blackshear had earlier installed the metal right over the old tar roof which was on the building when Blackshear bought it a few years earlier. Riner just covered the existing roof with the urethane to waterproof it.

Thus, to the extent the roof itself was damaged by work performed by Riner, whether that be portions of the roof underneath the urethane or portions of the roof not covered by the urethane, the policy would apply. The trial court's order granting summary judgment on this aspect of the case should be affirmed in that Blackshear does

---

[2] A jury must determine, for example, how much of the damage to the remainder of the roof was caused by Riner's alleged negligence, which is covered by the insurance policy, and how much of the damage was not caused by Riner. In addition, the jury must determine which portion of the roof was repaired by Riner, and which portion was not.

not seek recovery for damages to the insulation and sealant applied by Riner, that is, to his work product. The product produced was the urethane cover, not the roof.

As quoted in *Gary L. Shaw Builders v. State Auto. Mut. Ins. Co.*, 182 Ga. App. 220, 223 (355 SE2d 130) (1987), " '[the] purpose of this comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product.' [Cit.]" What is not covered are business risks; what is covered are occurrences giving rise to insurable liability. Id. at 224.

DECIDED JULY 11, 1997 —
RECONSIDERATION DENIED JULY 28, 1997.

*Alexander & Vann, William C. Sanders, Allen E. Lockerman IV*, for appellant.
*Kenneth E. Futch, Jr.*, for appellee.

