## A08A1643. HISTORICAL HOME DESIGNS, INC. v. CENTRAL MUTUAL INSURANCE COMPANY.

(673 SE2d 315)

MILLER, Chief Judge.

Historical Home Designs, Inc. ("Historical"), a home builder, sought coverage under a commercial general liability policy ("the Policy") issued to it by Central Mutual Insurance Company ("Central"). After Central denied coverage, Historical filed the current action, asserting claims for breach of contract and attorney fees. The trial court granted summary judgment to Central, holding as a matter of law that the Policy did not provide coverage for the loss sustained by Historical. Historical now appeals, asserting that the trial court erred because the exclusions relied upon by Central do not apply and the loss was covered under the "Products-completed

operations hazard" term of the Policy. Discerning no error, we affirm.

> On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law.

*Wachovia Bank v. Moody Bible Institute of Chicago*, 283 Ga. App. 488, 489 (642 SE2d 118) (2007).

The undisputed facts show that Historical constructed a home at 5550 Claire Rose Lane in Atlanta, which was completed in May 2002. Historical subcontracted the construction and installation of the slate roof of the home to Jemenez Roofing. On June 3, 2002, Historical conveyed the property by quitclaim deed to Ronald B. Ross ("Ross"), Historical's president and owner. Ross resided in the home on Claire Rose Lane for one and a half years. During that time, Historical rented a room as an office for Ross.

On May 6, 2004, Historical entered into a contract with Kristin Benson and Anna L. Benson to sell them the home even though Ross owned the home at that time. The home inspector for the Bensons discovered that the slate roof was defectively constructed, and on May 26, 2004, Historical executed an amendment to the purchase contract under which it agreed to remove and reinstall the slate roof in a good and workmanlike manner. On June 25, 2004, Ross conveyed the property by warranty deed to Historical. On that same day, Historical conveyed the property to the Bensons pursuant to the May 6, 2004 contract.

On or about June 14, 2004, Historical filed a claim under the Policy to recover the costs it incurred to replace the defective roof. On June 22, 2004, and again on August 3, 2004, Janet Fuller ("Fuller"), senior claims representative for Central, denied the claim, relying on Section I. 2. j. (1) of the Policy, the so-called "own property" exclusion, which excludes coverage for " 'property damage' to [p]roperty you own, rent or occupy." Fuller testified during her deposition that she regarded Historical and Ross as the same person because Ross met the definition of an "insured" under Section II of the Policy.

On summary judgment, Central argued that Historical was not entitled to coverage for the loss, citing several exclusions in the Policy, including the "own property" exclusion and other exclusions in Section I. 2. j. of the Policy, which are generally known as

"business risk exclusions."[1] Central also relied on the contractual liability exclusion in Section I. 2. b. of the Policy.[2] Historical, for its part, argued that the business risk exclusions did not apply because the "Products-completed operations hazard" term of the Policy extended coverage for the loss. The trial court granted summary judgment to Central and concluded that the property damage to the roof was not covered under the Policy, apparently relying on the business risk exclusion in Section I. 2. j. (6), which excludes coverage for property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Historical now appeals.

1. Historical contends that the "own property" exclusion in Section I. 2. j. (1) of the Policy is inapplicable under the facts of this case. We disagree.

" 'In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms.' " (Citation omitted.) *Sapp v. State Farm Fire &c. Co.*, 226 Ga. App. 200, 201 (1) (a) (486 SE2d 71) (1997). As discussed, the "own property" exclusion excludes liability for damage to "[p]roperty you own, rent or occupy." Historical argues that the word "you" in the "own property" exclusion means Historical only, and not Ross. We agree that the term "you" means Historical. Under the Policy, the word "you" refers to the named insured, not to any person who meets the definition of an "insured." Historical, not Ross, is the named insured. Nonetheless, we find that the plain terms of the "own property" exclusion bar coverage for the loss at issue here.

The installation of the defective roof occurred prior to completion of construction of the home in May 2002, and while the home was under construction, it was owned by Historical. Under the plain language of the Policy, since Historical owned the home up until May 2002, the "own property" exclusion precludes coverage for the loss.

Even if the relevant inquiry is whether Historical owned, rented,

---

[1] In relevant part, the business risk exclusions exclude coverage for:
"Property damage" to:
1) Property you own, rent, or occupy; . . .
5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;
6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
. . .
Paragraph 6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

[2] That exclusion excludes coverage for "[b]odily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

YALE LAW LIBRARY

or occupied the property at the time the loss was discovered or the roof was replaced, the "own property" exclusion still would bar coverage for the loss. From approximately May or June 2002 until Ross sold the home, Ross rented a home office from Historical. To the extent Historical maintained an office at the property through its president, Ross, Historical occupied the property, and the Policy excludes coverage for property damage to "[p]roperty you . . . rent or occupy." At all relevant times, therefore, Historical owned the property when the home was constructed, or it rented or occupied the home through Ross's use of a home office. Under either circumstance, the "own property" exclusion of the Policy precludes coverage for Historical's loss.

2. Historical asserts that the Policy covers the loss by virtue of the extension of coverage for the "products-completed operations hazard." We disagree.

Historical misunderstands the "Products-completed operations hazard" term of the Policy. The Policy does not contain an affirmative grant of coverage for any "products-completed operations hazard" but rather contains a definition of that term, which in relevant part, states: "Products-completed operations hazard [i]ncludes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.' . . ." This definition, in turn, operates as an exception to certain exclusions in the Policy. For example, Section I. 2. j. (6) of the Policy excludes coverage for "[p]roperty damage to [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Section I. 2. j. further explains, however, that this exclusion "does not apply to 'property damage' included in the 'products-completed operations hazard.' " There is no such exception to the "own property" exclusion, and, accordingly, we need not consider whether the property damage at issue here meets the definition of "products-completed operations hazard." But even if such an exception to the "own property" exclusion existed, we would find it inapplicable. The "products-completed operations hazard" includes property damage "occurring away from premises you own or rent. . . ." For the reasons discussed above in Division 1, the property damage at issue here did not occur away from property owned or rented by Historical.

3. In light of our disposition in Divisions 1 and 2, we need not address Central's arguments that coverage was excluded by various other exclusions in the Policy.

For the reasons set forth above, we affirm the trial court's order granting summary judgment in favor of Central.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 6, 2009.

*Ragsdale, Beals, Seigler, Patterson & Gray, Edgar S. Mangiafico, Jr.,* for appellant.

*Greer, Klosik, Daugherty & Swank, Robert J. McCune,* for appellee.