**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 6, 2015**

# In the Court of Appeals of Georgia

A15A0145. AUTO OWNERS INSURANCE COMPANY v. GAY    DO-007
    CONSTRUCTION COMPANY.

DOYLE, Chief Judge.

Gay Construction Company ("GCC"), a general contractor, filed suit against Auto Owners Insurance Company to recover directly as an additional insured under the commercial liability ("CGL") policy issued by Auto Owners to Dai-Cole Waterproofing Company, Inc. ("Dai-Cole"), GCC's subcontractor on a project. Specifically, GCC sought to recover from Auto Owners for costs associated with allegedly faulty workmanship by Dai-Cole. Auto Owners filed a motion for summary judgment, and the trial court denied the motion. Auto Owners filed an application for interlocutory review, which this Court granted. For the reasons that follow, we reverse.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

So viewed, the record shows that GCC was the general contractor on a project involving the reconstruction of a swimming pool and associated buildings for the Piedmont Park Conservancy. As part of this project, GCC was tasked with constructing a terrace above a newly constructed restroom and other areas. GCC subcontracted the pouring of concrete for the terrace floor to Gunby Construction, and it subcontracted with Dai-Cole to install a waterproofing membrane and a drainage mat to prevent leakage into the restrooms under the terrace. In early 2009, Gunby poured the concrete bottom slab for the terrace, and Dai-Cole, or its own subcontractor, installed the waterproofing membrane and drainage mat. A certificate of occupancy was issued in May 2009.

---

[1] (Citation and punctuation omitted.) *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

In mid-2009, Piedmont Park officials complained that water was leaking into the space below the terrace during and after heavy rain. GCC investigated and determined that the leak was caused by an allegedly improper application of the waterproofing membrane. After unsuccessful attempts to have Dai-Cole repair the membrane, GCC performed the work itself. To accomplish the repair, GCC removed the terrace's top concrete slab and drainage mat, repaired and replaced the waterproofing membrane, replaced the top concrete slab, and repaired the underside of the slab. GCC also repainted the underside of the slab to cover water stains and replaced a light fixture that was damaged as a result of the water infiltration. In all, GCC spent more than $126,000 to accomplish these repairs.

As required by GCC and the Piedmont Park Conservancy, Dai-Cole had obtained a CGL policy from Auto Owners. The policy provides that the term "'insured' means any person or organization qualifying as such under Section II, Who Is An Insured," which provides:

> A person or organization is an Additional Insured only with respect to liability arising out of "your work" for that Additional Insured by or for you: (1) [i]f required in a written contract or agreement; or (2) [i]f required by an oral contract or agreement only if a Certificate of

Insurance was issued prior to the loss indicating that the person or organization was an Additional Insured.[2]

The terms "'you' and 'your' refer to the Named Insured shown in the Declarations." The policy also contemplates, however, that "other persons and organizations" may "qualify[] as a Named Insured under this policy."

As in the standard CGL policy, Auto Owners agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy provides that "[t]his insurance applies to 'bodily injury' and 'property damage' only if . . . [such] is caused by an 'occurrence' that takes place in the 'coverage territory.'" The policy defines "property damage" as "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured." "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[3]

---

[2] The trial court assumed and the parties assume for purposes of this appeal that GCC is an additional insured under the terms of the policy.

[3] "Accident" is not defined in the policy.

The policy contains multiple business risk exclusions. One excludes "loss or damage caused by . . . [f]aulty, inadequate[,] or defective . . . [d]esign, specifications, workmanship, repair, construction, [or] renovation. . . ." Another provision excludes "Damage to Your Work" – that is, "'[p]roperty damage' to 'your work' arising out of it or any part of it and included within the products-completed operations hazard." Similarly, the policy excludes "'[p]roperty damage' to 'impaired property' or property that has not been physically injured arising out of . . . [a] defect, deficiency, inadequacy[,] or dangerous condition in 'your product' or 'your work.'"

Believing itself to be an additional insured under Dai-Cole's policy, GCC filed a first-party claim, seeking reimbursement for the costs of repairing and replacing the defective terrace. After Auto Owners ultimately denied GCC's claim, GCC filed this lawsuit against Auto Owners, claiming breach of contract and seeking reimbursement of the monies spent repairing the faulty waterproofing, as well as attorney fees and bad faith damages pursuant to OCGA § 33-4-6.[4] Auto Owners moved for summary judgment. The trial court denied its motion, concluding that GCC's claim was for property damage and therefore covered by the policy. The court also determined that

_____

[4] GCC also named Dai-Cole as a defendant in the lawsuit, but those claims are not at issue on appeal.

5

the claim did not fall under the policy's business risk exclusions. In doing so, the court interpreted the business risk exclusions to encompass only the work that was tasked to Dai-Cole and expressly rejected Auto Owners's argument that the exclusions apply to all the work that was charged to GCC. The trial court certified its order for immediate review, and this Court granted Auto Owners's application for interlocutory appeal.

1. Auto Owners argues that the trial court erred by denying its motion for summary judgment on the grounds that (a) GCC's claims failed to seek damages resulting from "property damage" as defined by the policy, and (b) the damages sought by GCC in its first-party claim are excluded by the business risk exclusions contained in the contract.

In Georgia,

[t]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying

6

the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.[5]

Here, GCC filed a first-party claim seeking reimbursement of costs associated solely with the repair and correction of faulty workmanship by Dai-Cole; there was no claim for damage to nondefective property not covered by GCC's or Dai-Cole's scope of work.[6] This claim is barred by the business risk exclusions in the Auto-Owners policy.

Generally, "business risk exclusions of a CGL policy . . . exclude liabilities for the repair or correction of defective work from the scope of coverage."[7]

> Georgia courts have clearly defined the risks that business-risk exclusions are intended to remove from coverage[,] . . . typically examin[ing] the following facts of each case when reviewing business-risk exclusions: First, the type and extent of construction work that the contractor is performing at the time of the accident and, second, the extent that the damages resulting from the contractor's accident may

---

[5] *Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999).

[6] GCC did have to repaint and repair lighting caused by Dai-Cole's faulty workmanship, but such repairs came within GCC's scope of work for the entire project.

[7] (Punctuation omitted.) *Taylor Morrison Svcs., Inc. v. HDI-Gerling America Ins. Co.*, 293 Ga. 456, 461-462 (1) (746 SE2d 587) (2013).

7

exceed the contractor's contractual duties. In short, the court asks itself, "Will the payment of insurance proceeds effectively cause an insurance company to guarantee the contractor's work?" If the answer is yes, the business-risk exclusions apply and the claim is denied. However, if the court finds that the payment of proceeds results from a negligent act causing damage above and beyond the original contractual obligations or to other property, the business-risk exclusions do not apply. . . .[8]

*Business risk exclusions are designed to exclude coverage for defective workmanship by the insured builder causing damage to the construction project itself.* There are two kinds of risks that are incurred by a contractor. The first is the business risk borne by the contractor to replace or repair defective work to make the building project conform to the agreed contractual requirements. This type of risk is not covered by the [CGL] policy, and the business risk exclusions in the policy make this clear. The second is the risk that the defective or faulty workmanship will cause injury to people or damage to other property. Because of the potentially limitless liability associated with this risk, it is the type for which commercial general liability coverage is contemplated. The risk intended to be insured is the possibility that the work of the insured, once relinquished or completed, will cause bodily

---

[8] (Punctuation omitted.) *Transp. Ins. Co. v. Piedmont Constr. Group, LLC*, 301 Ga. App. 17, 19 (1) (686 SE2d 824) (2009).

injury or damage to property other than to the completed work itself, and for which the insured may be found liable.[9]

Here, the claim asserted by GCC involved only corrections to and resulting repairs for faulty workmanship, which is precisely the type of claim generally barred by business risk exclusions. The only question, therefore, is whether the business risk exclusions contained in Dai-Cole's Auto Owners policy applied to GCC's claim in this case.

As in many CGL policies, the business risk exclusions here barred coverage for property damage to "your work." In previous cases, this Court has looked to the general contractor's scope of work when determining whether certain exclusions in a CGL policy apply to a general contractor's claim against its own insurer.[10] And when a subcontractor seeks first-party coverage under a CGL, courts consider the

---

[9] (Punctuation omitted; emphasis supplied.) *QBE Ins. Co. v. Couch Pipeline & Grading, Inc.*, 303 Ga. App. 196, 199-200 (2) (692 SE2d 795) (2010), quoting *SawHorse, Inc. v. Southern Guar. Ins. Co. of Ga.*, 269 Ga. App. 493, 495-496 (1) (604 SE2d 541) (2004).

[10] See, e.g., *Bituminous Cas. Corp. v. Northern Ins. Co. of New York*, 249 Ga. App. 532, 533-534 (548 SE2d 495) (2001), citing *Sapp v. State Farm Fire & Cas. Co.*, 226 Ga. App. 200, 203-204 (b) (486 SE2d 71) (1997).

subcontractor's scope of work.[11] Georgia courts have not, however, considered which party's scope of work should be considered when determining whether a business risk exclusion applies to a general contractor's claim for first-party coverage as an additional insured under its subcontractor's CGL policy.[12]

Here, Auto Owners did not guarantee the work of Dai-Cole, and the business risk exclusions in the policy removed from coverage the defective workmanship by Dai-Cole that caused damage to the project. GCC, as the general contractor, was responsible for all work done within the scope of work which it contracted to perform

---

[11] See, e.g., *SawHorse*, 269 Ga. App. at 495 (1); *Canal Indem. Co. v. Blackshear Farmers Tobacco Warehouse, Inc.*, 227 Ga. App. 637, 639-640 (2) (490 SE2d 129) (1997).

[12] In denying summary judgment to Auto Owners, the trial court relied upon *Hathaway Dev. Co., Inc. v. American Empire Surplus Lines Ins. Co.*, 301 Ga. App. 65 (686 SE2d 855) (2009), in which this Court held that a general contractor may recover a judgment against a subcontractor from the insurance company that issued the subcontractor's CGL policy. The trial court's reliance is misplaced. Although the general contractor in *Hathaway* initially filed a direct claim against the insurance company as an additional insured, the general contractor abandoned that argument on appeal. See id. at 66, n.1. Thus, the sole issue on appeal was whether the general contractor could recover a default judgment against the subcontractor from the subcontractor's insurance company for defective plumbing work by the subcontractor that damaged other portions of the apartment building projects. See id. at 65-66. A general contractor's first-party claims against an insurance company as an additional insured are not equivalent to a general contractor's claims as a judgment creditor against its debtor's insurer.

for the Piedmont Park Conservancy. To limit the business risk exclusions to only that work performed by Dai-Cole would permit GCC more coverage as an additional insured than that granted to Dai-Cole as policy-holder and would effectively require Auto Owners to financially guarantee Dai-Cole's work. Further, the business risk exclusions expressly excluded property damage to the work of a named insured arising out of the work, and the policy contemplated the possibility of qualifying an additional insured as a named insured under the policy.

Under these circumstances, the business risk exclusions in the Auto Owners policy exclude coverage for GCC's first-party claim for reimbursement for damages caused by Dai-Cole's faulty workmanship.[13] The trial court erred by denying summary judgment on this issue.

2. The trial court further erred by denying Auto Owners's motion for summary judgment as to GCC's claim for bad faith penalties and attorney fees. Under OCGA § 33-4-6, an award of attorney fees and a bad faith penalty is not authorized if the insurer "had any reasonable ground to contest the claim."[14] Based on our holding in

---

[13] See *Taylor Morrison Svcs.*, 293 Ga. at 461-462 (1). See also *SawHorse, Inc.*, 269 Ga. App. at 496-497 (1) (a); *Sapp*, 226 Ga. App. at 203-204 (b).

[14] (Punctuation omitted.) *Grange Mut. Cas. Co. v. Law*, 223 Ga. App. 748, 750 (2) (479 SE2d 357) (1996).

11

Division 1, Auto Owners had a reasonable ground to contest GCC's claim. Thus, penalties and fees under OCGA § 33-4-6 are not authorized.

*Judgment reversed. Phipps, P. J., and Boggs, J., concur.*

12