**NOT FOR PUBLICATION**



# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PULTE HOME CORPORATION, | No. 18-55792 |
| Plaintiff-Appellant, | |
| v. | D.C. No. 3:16-cv-02567-H-AGS |
| TIG INSURANCE COMPANY, Successor by Merger to American Safety Indemnity Company, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted November 12, 2019
Pasadena, California

Before: GRABER, BERZON, and CHRISTEN, Circuit Judges.

Plaintiff Pulte Home Corporation sued Defendant ASIC[1] for failing to

defend Plaintiff in two lawsuits brought by homeowners alleging construction

defects. The district court granted summary judgment to Defendant, holding that

Defendant had no duty to defend Plaintiff. We reverse and remand.

---

*This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[1] ASIC later merged with TIG Insurance, the named defendant on appeal.

1. Plaintiff waived or forfeited its argument that Defendant should be estopped from applying the Georgia choice-of-law provision; Plaintiff did not cite any record authority or pertinent legal authority for its one-paragraph argument. Cal. Pac. Bank v. FDIC, 885 F.3d 560, 570 (9th Cir. 2018). Likewise, Plaintiff waived or forfeited its claim for bad faith, either by failing to raise the claim in its opening brief, Barrera-Lima v. Sessions, 901 F.3d 1108, 1119 n.9 (9th Cir. 2018), or by raising the claim perfunctorily and inadequately in its reply brief, Cal. Pac. Bank, 885 F.3d at 570.

2. We review de novo the district court's decision to apply Georgia law. Ruiz v. Affinity Logistics Corp., 667 F.3d 1318, 1322 (9th Cir. 2012). Generally, a district court sitting in diversity applies the forum state's choice-of-law rules. Sarver v. Chartier, 813 F.3d 891, 897 (9th Cir. 2016). Under California's choice-of-law rules, the district court correctly enforced the choice-of-law provision.

The contracting parties had a "reasonable basis" for choosing Georgia law, because Defendant's principal place of business was in Georgia at the time of contracting. Nedlloyd Lines B.V. v. Superior Court, 834 P.2d 1148, 1153 (Cal. 1992). Plaintiff also failed to meet its burden to identify a conflict between Georgia law and a fundamental policy of California. Wash. Mut. Bank, FA v. Superior Court, 15 P.3d 1071, 1079 (Cal. 2001). Plaintiff argued that Georgia law

2

imposes greater restrictions on the recovery of punitive damages, which would affect Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. But California does <u>not</u> have a fundamental policy "requiring the application of California law to . . . claims based on the implied covenant of good faith and fair dealing." <u>Nedlloyd</u>, 834 P.2d at 1153. And, even assuming that California has a fundamental interest in regulating contracts such as the policies here, the standard is not whether this case implicates a fundamental interest of California, but whether Georgia law <u>contradicts</u> a fundamental policy of California. <u>Id.</u> at 1151.

3. We assume, without deciding, that issue preclusion does not bar Defendant's arguments in this case and that Defendant's policies cover only ongoing operations. Reviewing de novo, <u>Albino v. Baca</u>, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc), we hold that the district court erred by granting summary judgment to Defendant.

Because the allegations in the <u>Morris</u> and <u>Salazar</u> complaints at least "arguably bring the occurrence within the policy's coverage," Defendant had a duty to defend Plaintiff in those underlying lawsuits. <u>Hoover v. Maxum Indem. Co.</u>, 730 S.E.2d 413, 408 (Ga. 2012) (quoting <u>BBL-McCarthy, LLC v. Baldwin Paving Co.</u>, 646 S.E.2d 682, 685 (Ga. Ct. App. 2007)). The complaints'

3

allegations are so "ambiguous or incomplete"—for example, they do not specify when or how the property damage occurred, other than to say that it arose out of "the original construction"—that the property damage could have arisen out of ongoing operations, thus triggering the duty to defend. Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc., 490 S.E.2d 374, 376 (Ga. 1997). Nothing in the policies requires property damage to "manifest" during the policy period. Rather, the property damage simply must "occur" during the policy period, no matter when it becomes apparent to a homeowner. Moreover, nothing in Defendant's policies provides that coverage for occurrences during ongoing operations ceases after a subcontractor completes its operations.

Given the vagueness of the underlying complaints, Defendant failed to meet its burden to prove "without dispute" that the business-risk exclusions applied here. Hathaway Dev. Co. v. Am. Empire Surplus Lines Ins. Co., 686 S.E.2d 855, 861 (Ga. Ct. App. 2009). Defendant relies heavily on Auto Owners Ins. Co. v. Gay Construction Co., 774 S.E.2d 798, 801 (Ga. Ct. App. 2013), which involved a similarly-phrased business-risk exclusion for damages arising out of "your work." But the policy in that case contemplated the possibility that an additional insured (such as a general contractor) could qualify as a named insured, such that damages to the general project arising from work performed by any subcontractor could fall

4

within the scope of a named insured's—the general contractor's—work. <u>Id.</u> at 799, 801. Here, by contrast, the contracts unambiguously define "you" and "your" to include only the named insured (that is, the subcontractors, not the general contractor), and the Additional Insured Endorsement affirms this definition. That endorsement limits the general contractor's coverage to liability for "ongoing operations performed by the Named Insured for the Additional Insured," thus making clear that the "Additional Insured"—the general contractor—and the "Named Insured"—the subcontractor—are distinct. Accordingly, the business-risk exclusions at issue here do not unambiguously apply to Plaintiff's work, and arguably do not reach at least some property damage alleged in the complaints. The complaints' vague allegations of damage—from, for example, leaks in different parts of the homes—could refer to property damage caused by the subcontractors' faulty work even though the subcontractors were not working on those particular areas. <u>See</u> <u>Hathaway</u>, 686 S.E.2d at 863 (interpreting identical exclusions and holding that the insurer had to indemnify damage "not to 'that particular part of real property' where the subcontractor was working, i.e., the plumbing, but to the other property damaged by the faulty plumbing").

**REVERSED and REMANDED for further proceedings consistent with this disposition.**