73511. HOLLAND v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
(356 SE2d 50)

BEASLEY, Judge.

Holland, the insured under a policy issued by State Farm, was injured by an uninsured motorist in March 1982. She was paid $5,000 under her PIP coverage and this litigation ensued over her claim that she had an additional $45,000 in PIP coverage. State Farm was granted a summary judgment on this issue, from which Holland appeals. Although having the earmarks, this is not an ordinary *Jones/Flewellen* case, if there is such a thing. It contains, however, the procedures instituted by the insurance industry to comply with their requirements.

Holland was originally insured by State Farm in 1974. At that time, the automobile insured was a 1971 Capri. Holland requested and was issued $50,000 in PIP coverage. According to State Farm's records, in 1981 Holland changed her PIP coverage to the minimum $5,000. That form also reflects a different car, a 1973 Pontiac. While Holland acknowledged changing cars over the years with State Farm, she denied that the signature on the 1981 form was hers. That form, in any event, did not comply with the requirements of OCGA § 33-34-5 (c), *Jones v. State Farm &c. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623) (1980), cert. dismissed 248 Ga. 46 (280 SE2d 837) (1981), and *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983).

In November 1981, State Farm sent Holland an accept/reject form and explanatory brochure concerning optional PIP coverage along with her renewal notice. This was done in connection with her upcoming renewal date, December 7, 1981, and was apparently part of State Farm's effort to comply with *Jones/Flewellen*. Holland acknowledged that she did not timely pay her premium, as a result of which State Farm notified her that her policy lapsed on December 21, 1981.

Upon State Farm's receipt of her premium payment on January 7, 1982, her policy was renewed beginning January 8. As was its standard policy with lapsed policies, State Farm sent Holland another accept/reject form. Although Holland had no specific recall of receiving the November mailing, she did receive and return an accept/reject form received by State Farm on February 9, 1982. That form is marked to accept the minimum $5,000 PIP and to reject all optional coverages. Holland signed that form.

Viewing the evidence in her favor, as we must on appeal from the grant of summary judgment, Holland stated that she checked those accept/reject boxes referring only to the form as sent to her, which stated on its face her previous coverage, i.e., the $5,000 based on the September form. In other words, she relied on the company's statement of her previous coverage and made no effort to verify that for herself. The parties are in agreement that she had received her new policy, prior to the accident, and that it reflected her PIP as being only $5,000. She had not notified State Farm that this was not correct. In granting State Farm's summary judgment motion and denying hers, the trial court relied on *Parris & Son v. Campbell*, 128 Ga. App. 165 (196 SE2d 334) (1973) which imposes upon an insured the obligation to read the policy issued and to take steps to correct anything in it that is not accurate.

Holland does not contend that she was not informed of her privilege to obtain optional coverages, as required by OCGA § 33-34-5 (b) & (c) in its pre-1982 form. Instead, she argues that her 1974 election of $50,000 PIP was binding and could not be changed by her checking

the $5,000 minimal coverage box on the form received in February 1982 (assuming the signature on the 1981 change document was not hers and not authorized by her). Her argument in this regard seems to be premised on the fact that her policy was a renewal policy and State Farm did not have to obtain another form. Accepting her premise and ignoring the facts that her policy had lapsed and that there was no contract between the parties for parts of December and January, the insurer is not precluded from offering the optional coverage upon renewal of a policy even if it is not required to do so. OCGA § 33-34-5 (d). Even if it is regarded as a "renewal" of a lapsed policy, State Farm's procedure was to obtain another form when a policy was renewed or lapsed, and it did so in part to ascertain whether the premium should be increased. The point is that she signed the new form showing $5,000 and she received a policy reflecting $5,000 coverage.

"Insurance is a matter of contract law and contract rules and interpretations will apply. [Cit.] A party to a contract who can read, must read or show a legal excuse for not doing so, and ordinarily if fraud is an excuse, it must be such fraud as would prevent the party from reading the contract. [Cit.] One cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relationship or trust or confidence exists. [Cit.] There is no fiduciary relationship existing between an insured and an insurer. . . . 'Further, in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations, failure to do which will bar an action based on fraud.' " *Life Ins. Co. of Va. v. Conley*, 181 Ga. App. 152 (351 SE2d 498) (1986); *Barnes v. Levenstein*, 160 Ga. App. 115, 116 (286 SE2d 345) (1981). Thus, to the extent that Holland's position is based on a constructive fraud theory, it must fail.

The decision in *Enfinger v. Intl. Indem. Co.*, 253 Ga. 185 (317 SE2d 816) (1984) does not dictate a different result. That was a situation where there had been no compliance with the signature requirements of OCGA § 33-34-5 (b) on an existing policy of insurance (applied for in August 1980 before *Jones* was decided in October 1980), and the issue was whether a section 33-34-5 (c) mailing would "cure" this failure. The insured had made no response to the mailing, thus never acknowledging that he was aware of the optional coverages. Here, there is no question that Holland was aware of the availability of $50,000 coverage and that she had responded to at least one of State Farm's mailings in this regard and had at one time had the optional coverage. Her problem is that she signed the new acceptance-rejection form in February 1982 which showed the limit as $5,000 and could not rely on the fact that at some earlier time she had $50,000 coverage which she thought she had not changed. Even if she did not sign the change document, as she asserts, she was obli-

gated to read the renewed policy. *Whatley v. Universal Security Ins. Co.*, 177 Ga. App. 424, 425 (339 SE2d 398) (1986).

Thus there was a valid policy in existence in March 1982 reflecting that only $5,000 in PIP was in effect. Holland had signed and returned the accept/reject form establishing her desire for only the minimum. She may not now rely on her own ignorance of the $5,000 provisions of her lapsed policy as a way to obtain that which she specifically rejected in 1982. At least twice she had notice that it was $5,000: on the accept/reject form and on the policy itself.

There being no dispute as to these material facts, and State Farm being entitled to judgment as a matter of law, the trial court was correct in granting State Farm's motion for summary judgment and denying Holland's on the same ground.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED MARCH 12, 1987 —
REHEARING DENIED MARCH 31, 1987 —

*Benjamin W. Beazley*, for appellant.
*Mack T. Elder, W. Gordon Hamlin, Jr.*, for appellee.