**THE SECKINGER–LEE COMPANY, a Georgia Corporation, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, an Illinois Corporation, and Allstate Indemnity Company, an Illinois Corporation Defendants.**

No. CIV.A. 197–CV–978TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 1, 1998.

Richard Byron Attridge, Dwight J. Davis, Fred Gordon Codner, James W. Boswell, III, King & Spalding, Atlanta, GA, James Edward Butler, Jr., Butler Wooten Overby Pearson, Fryhofer & Daughtery, Columbus, GA, Kevin R. Armbruster, Leticia D. Alfonso, Cushing Morris Armbruster & Jones, Atlanta, GA, George W. Fryhofer, III, Albert Matthews Pearson, III, Cale Howard Conley, Butler Wooten Overby Pearson, Fryhofer & Daughtery, Atlanta, GA, for the Seckinger-Lee Company, plaintiffs.

Robert D. McCallum, Jr., Ronald Louis Reid, Richard Thomas Fulton, William T. Plybon, Alston Dayton Correll, III, Douglas G. Scribner, Kevin Charles Wilson, Douglas A.S. Chalmers, Jr., Alston & Bird, Atlanta, GA, for Allstate Insurance Company, Allstate Indemnity Company, defendants.

### *ORDER*

THRASH, District Judge.

This putative class action arises out of a dispute concerning a commercial automobile insurance policy. It is before the Court on Defendants' Motion for Partial Summary Judgment [Doc. No. 59], Defendants' Motion to Strike Expert Report or, in the Alternative, to Extend Time for Expert Discovery [Doc. No. 72–1, 72–2], Defendants' Motion to Substitute Counsel [Doc. No. 75], Plaintiff's Motion for Oral Argument on Defendants' Motion for Partial Summary Judgment [Doc. No. 79], Defendants' Motion for Leave to File Reply Brief in Excess of Page Limits [Doc. No. 77], Plaintiff's Motion for Leave to File Supplemental Brief [Doc. No. 82], Plaintiff's Motion for Sanctions [Doc. No. 83], Plaintiff's Motion for Leave to File Reply Brief Under Seal [Doc. No. 93], and Plaintiff's Motion for Class Certification [Doc. No. 86]. As a preliminary matter, the Court grants Defendants' Motion to Substitute Counsel, grants Defendants' Motion for Leave to File Reply Brief in Excess of Page Limits, and denies Plaintiff's Motion for Oral Argument on Defendants' Motion for Partial Summary Judgment. For the reasons set

forth below, the Court grants Defendants' Motion for Partial Summary Judgment, denies Defendants' Motion to Strike Expert Report or, in the Alternative, to Extend Time for Expert Discovery, and denies Plaintiff's Motion for Class Certification.

## I. BACKGROUND

This is a suit by the Seckinger–Lee Company against Allstate, a national provider of insurance. Allstate issued a commercial automobile insurance policy to Seckinger–Lee. Seckinger–Lee made a claim involving a stolen automobile. The essential dispute between the parties is whether Allstate's "stated amount" endorsement requires it to pay the value of the automobile as stated in the policy, or whether that stated value is merely the upper limit of Allstate's liability to pay actual cash value.

Seckinger–Lee was founded in 1986 by Bobbie Lee Bufford, the company's President, Treasurer and majority stockholder, and Beverly Seckinger, the Vice–President, Secretary and minority stockholder. The company manufactured and distributed specialty foods, primarily gourmet biscuits and cookies. At its peak, Seckinger–Lee had gross annual sales in excess of $2.5 million. Since the filing of this suit, the shareholders of Seckinger–Lee have sold the business. Essentially, all that remains of the former company is this lawsuit.

Seckinger–Lee owned a restored 1973 Cadillac Eldorado that it used for advertising and to make deliveries as part of its food business. In addition to the Cadillac, Seckinger–Lee owned and leased several other vehicles. Prior to May, 1996, Plaintiff had insured its automobiles under a State Farm policy that it obtained through Deane Long, then an agent for State Farm. In December, 1994, Long left State Farm and became an exclusive Allstate agent. After Long became an exclusive agent for Allstate, she contacted Seckinger–Lee to encourage it to move its insurance business to Allstate.

At Seckinger–Lee, Long dealt with Tanya Seckinger Cochran, the Chief Financial Officer. Cochran was primarily responsible for handling Seckinger–Lee's insurance matters, subject to Bufford's oversight. Cochran told Long that the company would consider switching to Allstate if it could get the same coverage at lower cost. Cochran faxed Long documents detailing Seckinger–Lee's State Farm policies, and requested a quote for the same coverage by Allstate. After reviewing Seckinger–Lee's needs, Long concluded that Allstate could offer coverage equivalent to Seckinger–Lee's current policy for less money if Seckinger–Lee insured five vehicles with Allstate. Allstate could then offer a "fleet discount." During the discussions between Long and Cochran, Long became aware that the Eldorado was a restored automobile. Allstate's underwriting guidelines did not allow comprehensive and collision coverage of restored automobiles above a certain age without an appraisal and/or special underwriting approval.

Seckinger–Lee agreed to switch its automobile business to Allstate. Seckinger–Lee dealt solely with Long while acquiring the policy. During these negotiations, Seckinger–Lee's representatives at all times realized that Long was Allstate's agent and that her objective was to sell Allstate's product. On May 1, 1996, Allstate issued a commercial automobile insurance policy to Seckinger–Lee covering five vehicles, including the Eldorado. The policy contained Allstate's standard "stated amount" endorsement. Neither Bufford, the President, nor Cochran, the Chief Financial Officer, ever read the entire policy before accepting it. They gave the policy only a cursory review. Bufford and Cochran based their decision to switch insurance companies on the lower total cost of insuring the five vehicles with Allstate, and because they believed Long would provide good service. Approximately one month after Allstate issued the policy, the automobile vanished apparently due to theft.

This dispute arose over the amount Allstate offered to pay for the missing Cadillac. Because it was a restored car, its value differed from that of a run-of-the-mill 1973 Cadillac Eldorado. The value of a restored car may have little to do with the depreciated book value of the automobile. When Allstate insures a restored automobile it requires that the policy include a "stated amount" endorsement. Allstate requires that the insured get an appraisal of the vehicle. The stated amount endorsement limits the insurance

company's maximum liability to the amount in the appraisal. Seckinger–Lee obtained an appraisal that valued the Eldorado at $23,000. Although Long never discussed the particulars of stated amount insurance with Cochran or Bufford before the policy was issued, both indicated to Long their desire to insure the Cadillac at its estimated value of $23,000. When it determined that one of the insured vehicles was a restored automobile, Allstate included its standard stated amount endorsement into Seckinger–Lee's insurance policy. The stated amount endorsement for the Cadillac included the following language:

C. LIMIT OF INSURANCE

The most we will pay for "loss" in any one "accident" is the least of:

1. The actual cash value of the damaged or stolen property as of the time of the "loss"

2. The cost or [sic] repairing or replacing the damaged or stolen property; or

3. The amount shown in the Schedule.

On the schedule of covered vehicles, the value of the Eldorado was listed as $25,281. It is undisputed that the schedule should have stated that the Cadillac was valued at $23,000. It is undisputed that the policy was validly issued with the stated amount endorsement.

The only discussion between Seckinger–Lee and Long regarding the stated amount endorsement occurred when Bufford discovered several clerical errors in the policy. For example, the declaration page indicated the Cadillac's appraised value at $25,281 and the cost as new of $4,000. Unclear about the significance of the different numbers, Bufford called Long. During that conversation Long assured Bufford that the Cadillac was insured for $23,000. Long never explained to Bufford how a stated amount endorsement works. After the Cadillac was stolen, Seckinger–Lee attempted to recover from Allstate for the loss. Allstate offered only the cash value of the car which it contends is $8,000. Seckinger–Lee puts the cash value of the car closer to the $23,000 appraisal. Moreover, Seckinger–Lee contends that even if the cash value is not $23,000, Allstate misled Seckinger–Lee by representing that it would receive the appraisal value if the car were stolen.

This action was originally filed in the Superior Court of Fulton County in Atlanta, Georgia. Defendant Allstate Insurance Company, an Illinois corporation, removed the case to this Court. After removal, Plaintiff, a Georgia corporation, first amended its Complaint to include class claims on behalf of other holders of similar Allstate policies containing stated amount endorsements. Plaintiff again amended its Complaint to add Allstate Indemnity Company, also an Illinois corporation. Seckinger–Lee's Complaint consists of seven counts: (1) fraud, (2) constructive fraud, (3) negligent misrepresentation, (4 and 5) breach of contract, (6) bad faith refusal to pay benefits under O.C.G.A. § 33–4–6 (1982), and (7) litigation expenses. The first four counts were brought on behalf of the named Plaintiff and members of the class, while Counts Five through Seven were brought only on behalf of Seckinger–Lee. This Court previously dismissed Counts three and five for failure to state a claim.

This case is now before the Court on Defendants' Motion for Partial Summary Judgment [Doc. No. 59]. In deciding the motion, the Court will consider all of the evidence offered by Plaintiff. Accordingly, the Court denies Defendants' Motion to Strike Expert Report, and denies its alternative Motion to Extend Time for Expert Discovery [Doc. Nos. 72–1, 72–2]. The Court will disregard those portions of the expert affidavit that express solely legal conclusions or inadmissible parol evidence. Of the remaining claims, Defendants have moved for summary judgment on Counts One, Two and Four. Defendants do not seek summary judgment on Counts Six and Seven. Defendants contend that Plaintiff has failed to establish genuine issues of material fact under Count One for fraud, under Count Two for constructive fraud, and under Count Four for breach of contract. Because resolution of the motion for partial summary judgment will affect the Court's treatment of the other pending motions, the Court will deal with it first.

## II. SUMMARY JUDGMENT STANDARDS.

Summary judgment is appropriate only when the pleadings, depositions, and affida-

vits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION.

### A. *Fraud (Count One).*

■ In Count I, Plaintiff asserts a claim of fraud on behalf of itself and members of a proposed class of Allstate policyholders. Georgia law applies to the claim of fraud in this diversity action. In Georgia, the common law tort of fraud requires five elements: (1) a false representation by the defendant; (2) with scienter, or knowledge of the falsity; (3) with intent to deceive the plaintiff or to induce the plaintiff into acting or refraining from acting; (4) on which the plaintiff justifiably relied; (5) with the proximate cause of damages to the plaintiff. *Williams v. Dresser Industries*, 120 F.3d 1163 (11th Cir.1997); *Sears Mortgage Corp. v. Leeds Building Products, Inc.*, 219 Ga.App. 349, 464 S.E.2d 907 (1995). To survive a motion for summary judgment, Plaintiff must offer some evidence from which a jury could find each element of the tort. *Sears Mortgage Corp.*, 464 S.E.2d at 910.

■ The Court finds that Plaintiff has failed to establish the first element of a claim for fraud. The first element requires a showing of an affirmative misrepresentation or, in appropriate cases, evidence of suppression of a material fact. *See* O.C.G.A. § 23–2–51—23–2–54. Plaintiffs allege both—that Allstate made false representations and failed to disclose material facts regarding the policy.

■ Under Georgia law, statements as to the nature of insurance coverage are opinions of law and cannot support an action for fraud. *Marett Properties, Inc. v. Prudential Ins. Co. of America*, 167 Ga.App. 631, 307 S.E.2d 69 (1983); *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir.1994); *Macon–Bibb County Hosp. Auth. v. Georgia Kaolin Co.*, 646 F.Supp. 90 (M.D.Ga.1986), *aff'd* 817 F.2d 98 (11th Cir. 1987). In *Marett Properties,* an insurance agent assured the plaintiff that his son's pre-existing illness would be covered under a new group insurance policy. Relying on the agent's representations, the plaintiff purchased the Prudential policy and canceled a policy which was providing partial coverage for his son's treatment. After the plaintiff submitted claims for his son, Prudential declined payment. Prudential referred to language in the policy excluding coverage for specified claims submitted on behalf of the plaintiff's son. In the insured's suit against Prudential, the trial court granted summary judgment on a claim of fraud. The Georgia Court of Appeals affirmed even though the agent's advice to the plaintiff was erroneous. "[W]here the truth of the representations would depend upon the legal effect of the policy provisions, then the alleged misrepresentations were misrepresentations of law. Misrepresentations as to a question of law cannot constitute remediable fraud, as such representations are ordinarily regarded as mere expressions of opinion." *Id.* at 634, 307 S.E.2d 69 (citations omitted).

■ Plaintiff claims that the language in the policy is, in itself, a misrepresentation. As noted below, the policy language is clear and unambiguous that Allstate will pay the *least* of (1) actual cash value, (2) the cost of repair or replacement, or (3) the stated amount. This is the coverage Allstate intended to provide. The Plaintiff has not come forward with any controlling or persuasive authority that clear, unambiguous language in an insurance policy can itself constitute a misrepresentation that will support a claim for fraud. This contention is certainly inconsistent with the rule stated in *Marett*

*Properties.* Accordingly, the Court concludes that nothing in the policy itself constitutes an actionable misrepresentation.

■ Plaintiff also relies upon Long's assurances that the Cadillac was insured for $23,000. Because Allstate later denied the claim for this amount, Plaintiff claims that Long's statement constitutes a false representation. Under Georgia law, however, Long's representation constitutes an opinion of law and cannot sustain Plaintiff's action for fraud. In addition, Long's statement was accurate if it was intended to mean that the Eldorado was insured up to $23,000 if that was its actual cash value at the time of a loss. In any event, such an ambiguous statement may not furnish the basis for a claim of fraud in light of the clear and unambiguous language of the policy itself.

Plaintiff also argues that Allstate failed to disclose material facts about the coverage provided by its policy. Specifically, Plaintiff contends that Allstate's policy fails to define "actual cash value" and does not distinguish between "stated value" and "stated amount" insurance. Plaintiff also contends that "Allstate fails to disclose...(to the insured that) he is paying 'something for nothing.'" Finally, Plaintiff alleges that Allstate fails to inform the insured that the premium for stated amount insurance turns on the appraised value, while claims are settled on the basis of actual cash value.

■ Allstate's alleged omissions would satisfy the first element of fraud if it was under an obligation to communicate the information. "Suppression of a material fact which a party is under an obligation to communicate constitutes fraud." O.C.G.A. § 23–2–53. Put another way, an obligation to disclose must exist before a party may be held liable for fraud based upon suppression of material facts. *William Goldberg & Co. v. Cohen*, 219 Ga.App. 628, 466 S.E.2d 872 (1995). "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." O.C.G.A. § 23–2–53.

■ Georgia law is very clear that no confidential or fiduciary relationship exists between an insured and the insurer and its agents. *State Farm Fire & Cas. Co. v. Fordham*, 148 Ga.App. 48, 250 S.E.2d 843 (1978).

*See also Modern Woodmen of America v. Crumpton*, 226 Ga.App. 567, 487 S.E.2d 47 (1997). Consequently, "in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations, failure to do which will bar an action based on fraud." *Life Ins. Co. of Virginia v. Conley*, 181 Ga.App. 152, 351 S.E.2d 498 (1986). In this case, the corporate officers responsible for purchasing insurance for Plaintiff testified in their depositions that they failed to read the policy in its entirety. Cochran only "skimmed" the policy and could not recall ever reading the endorsement. Bufford said that while she read part of the policy, she did not read the endorsement because "[i]t looked empty." Both officers admit having the opportunity to read the entire policy. Had they done so, they would have found limiting language contained in the endorsement. The endorsement states that the most Allstate will pay for loss in any one accident is the least of: the actual cash value of the damaged or stolen property as of the time of the loss; the cost of repairing or replacing the damaged or stolen property; or the amount shown in the schedule.

■ In light of these facts and the well established Georgia law, the Court finds that Plaintiff failed to exercise ordinary diligence. As a purchaser of insurance, Plaintiff had a duty to read its policy. *Sapp v. State Farm Fire & Cas. Co.*, 226 Ga.App. 200, 486 S.E.2d 71 (1997). If the responsible officers could not personally understand the exclusions or definitions, they had a duty to seek further assistance or counsel in determining the parameters of their coverage. *Id.* Plaintiff was not entitled to rely upon representations of Defendants' agent if those representations conflicted with the clear language in the policy. *Home Insurance Co. v. North River Insurance Co.*, 192 Ga.App. 551, 385 S.E.2d 736 (1989). Further, the Court finds that no confidential relationship existed between Seckinger–Lee and Allstate which would require any heightened duty to disclose material facts. Seckinger–Lee thought that it was getting a good deal by getting its vehicles insured for less cost. There was no confidential relationship between Allstate and

Seckinger–Lee that required Allstate to disclose that it might not be such a great deal.

Georgia law also requires a duty to disclose in light of the particular facts and circumstances of the case. *Williams v. Dresser Industries,* 120 F.3d 1163, 1168 (11th Cir. 1997) (citing O.C.G.A. § 23–2–53). The Plaintiff has not cited, nor can the Court find, any Georgia case finding a duty to disclose based upon particular circumstances in an insurer-insured relationship. However, the statute dates back to 1863, and several Georgia courts have construed its "particular circumstances" language.

In *Cochran v. Murrah,* 235 Ga. 304, 219 S.E.2d 421 (1975), a farm hand sued his employer seeking rescission of a release from liability. The employee was injured while working on his employer's farm. After paying roughly $20.00 in doctor's bills and three weeks salary to the employee, the employer induced the employee to sign a release by telling him that insurance would pay the medical bills. Although the employee could read, he did not read the release before signing it. The employer told him that the papers were for the employer to recover the money he had paid the doctor. In fact, the papers consisted of a release in favor of the employer and his insurance provider for all claims arising from the accident. The Georgia Supreme Court affirmed the denial of the defendant's motion for summary judgment based on the release. Concluding that a jury could find the existence of a confidential relationship which would have required the employer to disclose the document's true nature, the court reviewed the "particular circumstances" language of O.C.G.A. § 23–2–53 (then codified as § 37–704, 1933 Code). Factors in the case from which a jury could find a confidential relationship based upon the particular circumstances included: (1) the plaintiff had worked for the defendant for eight years; (2) part of the plaintiff's pay consisted of a rent-free house on the defendant's farm; (3) trust on the part of the plaintiff toward its employer to pay whatever wages were due; (4) the possibility of the plaintiff's showing that he was accustomed to relying on the defendant for advice; and (5) reliance on the defendant's representations rather than the document itself. *Cochran v.*

*Murrah,* 235 Ga. at 307–308, 219 S.E.2d at 424.

At most, Seckinger–Lee can argue that they relied on representations from the Allstate's agent. Its officers admit relying on Long's representations rather than on the policy itself. However, as discussed above, such reliance is not permitted in an insured-insurer relationship. Insureds have a duty to read the policy. The "particular circumstances" exception allowed in a claim for fraud has not been applied by a Georgia court in an action by an insured against its insurer. Moreover, those cases where Georgia courts have found particular circumstances giving rise to a duty to disclose involve dependent relationships. No such dependence existed in Seckinger–Lee's negotiations with Allstate. Seckinger–Lee was a sophisticated enterprise with gross annual sales exceeding $2.5 million at its peak. Its officers at all times knew of Long's status as an insurance salesperson for Allstate. Bufford so testified in her deposition:

> Q: When you were dealing with Deane Long, did you understand that she was an agent for Allstate?
>
> A: I did.
>
> Q: When you were dealing with Deane Long, you understood that she was not acting as an insurance adviser to you, did you not, that she was trying to sell you a product?
>
> A: Yes, she was trying to sell me a product.
>
> * * * * * *
>
> Q: You realized she had a product and she was trying to sell you a product?
>
> A: Of course. I don't recommend somebody else's biscuits instead of mine either.

(Bufford Dep. 179–180). Aware of Long's capacity and motivations, no representative of Seckinger–Lee ever read the full policy. They do not dispute their opportunity to do so. Bufford only "flipped through" the policy and never read the limiting endorsement.

> Q: But did you read the policy that was provided to you by Allstate?
>
> A: No, I didn't read all of it.

Q: Did you have the opportunity to read all of it if you wanted to?

A: Of course.

\* \* \* \* \* \*

Q: ...[D]id you at any time before the theft of the automobile read or review the stated amount endorsement...?

\* \* \* \* \* \*

A: I didn't review it. It looked empty.

Q: You did note the heading in bold letters that says this endorsement changes the policy, please read it carefully?

A: No, I didn't see that.

(Bufford Dep. 121; 146). Not only did Bufford not read the endorsement, Cochran, who handled the negotiations for insurance, only "skimmed" the policy and never read the endorsement.

Q: Have you ever read...this stated amount insurance endorsement...?

A: No, not that I remember.

(Cochran Dep. 112). Plaintiff has offered neither evidence nor explanation for its blind reliance on Long's representations.

▮ Chief Justice Russell, of the Georgia Supreme Court, in 1925, explained the essence of the duty to speak in supporting a claim of fraud: "Suppression of the truth is not a fraud unless used as a means of deceiving another. No man is compelled to break silence and speak, unless there is an obligation resting upon him to speak." *Reeves v. B.T. Williams & Co.,* 160 Ga. 15, 127 S.E. 293 (1925). The Georgia courts have held that there are two essential factors necessary for the duty to speak to arise from "particular circumstances": (1) the intentional concealment of a fact (2) for the purpose of obtaining an advantage or benefit. *Georgia Real Estate Commission v. Brown,* 152 Ga. App. 323, 325, 262 S.E.2d 596, 597 (1979).

▮ In this case, Seckinger–Lee has put forward no proof of intentional concealment on the part of Allstate. The Court has carefully considered the material offered by Plaintiff in the form of internal Allstate memoranda, promotional. material used by Allstate in various states, and the affidavit of Plaintiff's expert, Mr. Tim Ryles, former Insurance Commissioner of Georgia. The evidence reveals that Allstate may have known that its customers gained little or no benefit from a stated amount endorsement. A typical example of Plaintiff's evidence appears on a page of material from a "Claim Education Seminar" discussing stated amount insurance. It states: "INSURED PAYS AN ADDITIONAL PREMIUM AND RECEIVES NO ADDITIONAL PROTECTION. IN FACT, *THE INSURED RECEIVES LESS PROTECTION.*" The Plaintiff makes a very good argument that Allstate is using the stated value endorsement to protect itself (which Allstate does not deny), but it has not produced any authority that an insurance company has a duty to tell consumers which clauses in the policy benefit the insurer as opposed to those that benefit the insured.[1]

The Court finds that Plaintiff has failed to establish an essential element to support its claim for fraud. Specifically, the Court finds no evidence of a false representation in Allstate's written policy. As explained above, the oral representations made by Allstate's agent are of no consequence. Finally, the Court finds neither a confidential relationship nor any particular circumstances that would create a duty to disclose on the part of Allstate beyond that which appeared in the policy.

The failure of Plaintiff to meet its burden as to a single element prevents its fraud claim from surviving a motion for summary

---

1. As an aside, the insurance Allstate sold Plaintiff may not have constituted the *per se* bad deal for Seckinger–Lee as Plaintiff has argued. While Plaintiff may have paid more for the stated amount insurance on the Cadillac, the aggregate premiums on the five cars insured with Allstate declined. The savings in premiums, along with the good service they believed Long would provide, induced Plaintiff's officers to switch to Allstate. In addition, the Court questions whether a rational insurance company would obligate itself to pay the appraised value of an automobile as of

the date the policy was issued when the value of the vehicle could be much less at the time of loss due to a host of factors that can affect the value of a restored vehicle. The value of an antique automobile does not always go up as Plaintiff suggests. For example, the engine could blow up the day after the policy was issued. This would certainly affect the value of the vehicle, but according to Plaintiff's argument, it would have no effect upon what the insurance company had to pay.

judgment. In this case, the Defendants have carried their burden of showing that there is no genuine issue of fact with respect to a second necessary element of a claim for fraud. The Court finds that Plaintiff's reliance on assertions made by Allstate was not reasonable because of Plaintiff's failure to read its policy in its entirety. "[T]here is no legal relief afforded when one 'blindly relied on the representations of the (other party) as to matters of which he could have informed himself.'" *First Union Nat'l Bank v. Gurley,* 208 Ga.App. 647, 649, 431 S.E.2d 379 (1993). As discussed above, Plaintiff had the opportunity to read the full policy and neglected to do so. The duty to read its policy coupled with the opportunity and failure to do so preclude Plaintiff from recovering for fraud. The Plaintiff has failed to create a genuine issue of fact as to its claim for fraud. Accordingly, the Defendants are entitled to summary judgment on Count One of Plaintiff's complaint.

### B. *Constructive Fraud(Count Two).*

■ Plaintiff also asserts a claim for constructive fraud on behalf of itself and members of a proposed class. Under Georgia law, fraud may be actual or constructive. "Constructive fraud consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another." O.C.G.A. § 23–2–51(b). Constructive fraud is legal fraud without knowledge or scienter. *Macon–Bibb County Hosp. Auth.,* 646 F.Supp. at 93. "Misrepresentation of a material fact, made willfully to deceive or recklessly without knowledge and acted on by the opposite party or made innocently and mistakenly and acted on by the opposite party, constitutes legal fraud." O.C.G.A. § 23–2–52. In *Holland v. State Farm Mut. Auto. Ins. Co.,* 182 Ga.App. 405, 356 S.E.2d 50, (1987), the Georgia Court of Appeals held:

> Insurance is a matter of contract law and contract rules and interpretations will apply. A party to a contract who can read, must read or show a legal excuse for not doing so, and ordinarily if fraud is an excuse, it must be such fraud as would prevent the party from reading the contract. One cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relationship or trust or confidence exists. There is no fiduciary relationship existing between an insured and an insurer....Further, in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations, failure to do which will bar an action based on fraud.

*Holland,* 182 Ga.App. 405, 407, 356 S.E.2d 50, 52 (1987).

■ As discussed more fully above, the Court finds·that there was no confidential relationship and that Plaintiff's failure to read its policy in its entirety bars any claim for constructive fraud. Moreover, the Court finds the endorsement language clear and explicit when it states that Allstate will pay the least of (1) actual cash value, (2) repair or replacement costs, or (3) the appraised value set forth in the schedule. Upon reviewing the entire contract, the Court concludes that this provision clearly defines the limits to which Allstate provided coverage to Plaintiff for a stolen Cadillac. This provision is not ambiguous or misleading. Thus, Allstate did not breach its duty to clearly delineate the limits of coverage for the Eldorado. Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Count Two of Plaintiff's Complaint.

### C. *Breach of Contract (Count Four).*

In Count Four, Seckinger–Lee asserts two claims for breach of contract: one on its own behalf and another on behalf of the members of a proposed class. As to its claim and the claims asserted on behalf of the class, Plaintiff contends that Allstate breached its contract by refusing to settle the claim by paying the stated amount (appraisal amount) for the total loss of the insured vehicle. In this claim, the Plaintiff argues that the policy is ambiguous and should be interpreted in its favor rather than as Allstate interprets it. "The essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *TDS Healthcare Sys. Corp. v. Humana Hosp. Ill. Inc.,* 880 F.Supp.

1572 (N.D.Ga.1995) (citing *Cartin v. Boles,* 155 Ga.App. 248, 252, 270 S.E.2d 799 (1980)). Neither side disputes the existence of a valid contract for insurance. The dispute emerges from the alleged breach.

Plaintiff alleges that Allstate breached the contract for stated amount insurance by refusing to pay the appraisal value of the stolen automobile after a total loss. Plaintiff points out that Allstate charges a higher premium for stated amount insurance, yet refuses to pay claims for the "stated amount." Consequently, Plaintiff argues, purchasers of Allstate's stated amount insurance policies pay something for nothing. Allstate insists the contract allows it to pay the lesser actual cash value, as it did with Seckinger–Lee.

Georgia law provides that insurance contracts are governed by the ordinary rules of construction applicable to other contracts. *Chanin v. Tharrington,* 222 Ga.App. 890, 476 S.E.2d 651 (1996). When the language of the contract is plain and unambiguous, no construction is required or even permissible. *Franchise Enter., Inc. v. Ridgeway,* 157 Ga.App. 458, 278 S.E.2d 33 (1981); O.C.G.A. § 13–2–1. Thus, interpretation of a written contract is properly subject to disposition on a motion for summary judgment. *Sims' Crane Svc., Inc. v. Reliance Ins. Co.,* 514 F.Supp. 1033 (S.D.Ga. 1981), *aff'd,* 667 F.2d 30 (11th Cir.1982).

After carefully reviewing the policy purchased by Seckinger–Lee, the Court finds the contract clear and unambiguous. While the Court cannot dispute the limited attractiveness of Allstate's stated amount insurance, neither can the Court dispute the clarity of the endorsement limitation. As discussed more fully above, the Court finds the limiting language in the policy submitted by Plaintiff to be clear and explicit as to Allstate's obligations. In the two page endorsement, Allstate provides: "The most we will pay for 'loss' in any one 'accident' is the least of: (1) The actual cash value of the damaged or stolen property as of the time of the 'loss'; (2) The cost or [sic] repairing or replacing

the damaged or stolen property; or; (3) The amount shown in the Schedule." The endorsement is clearly entitled as pertaining to **"STATED AMOUNT INSURANCE".** Further, a notice at the top of its first page warns policyholders that **"THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY."** The policy is not ambiguous because it does not define "actual cash value." *See Lerer Realty Corp. v. MFB Mutual Insurance Co.,* 474 F.2d 410, 412 (5th Cir.1973).[2]

Finding the contract to be clear, explicit, and unambiguous, it would be improper to consider any parol evidence. The language within the "four corners" of the policy clearly allows Allstate a choice of paying a lower actual cash value rather than the appraised value reflected in the schedule. Because no genuine issues remain to be tried, the Court grants Defendants' Motion for Summary Judgment as to the Count Four breach of contract claim. This leaves for trial the Plaintiff's breach of contract claim in Count Five and the Plaintiff's bad faith claim in Count Six.

### D. *Class Certification.*

The Court has ruled against the Plaintiff on the merits of its fraud, negligent misrepresentation and breach of contract (Count Four) claims. Accordingly, it cannot be said that its claim is typical of the claims of the class that it seeks to represent. *See* Fed. R.Civ.Pro. 23(a). Therefore, the Motion to Certify a Class should be denied.

### E. *Motion for Sanctions*

The Plaintiff has filed a Motion for Sanctions [Doc. No. 83] in which it alleges that Allstate has committed a fraud on the Plaintiff and the Court by concealing documents during discovery. Allstate responded by submitting the Affidavits of Jesse Fordham and Bill Chambless that conclusively show that the Motion for Sanctions was based upon suspicion and assumptions rather than

---

**2.** The Plaintiff in its response to the Defendants' Motion for Partial Summary Judgment twice cites *Ryan v. State Farm Mutual Automobile Insurance Company,* 261 Ga. 869, 413 S.E.2d 705 (1992) for the statement that insurers have a duty

"to define any limitations on that coverage in clear and explicit terms." The case does not support this statement and the quoted language does not appear in the opinion.

facts. The Motion for Sanctions should be denied.

## V. CONCLUSION.

For the reasons set forth above, the Court GRANTS Defendants' Motion for Partial Summary Judgment [Doc. No. 59], DENIES Defendants' Motion to Strike Expert Report or, in the Alternative, to Extend Time for Expert Discovery [Doc. Nos. 72–1, 72–2], GRANTS Defendants' Motion to Substitute Counsel [Doc. No. 75], DENIES Plaintiff's Motion for Oral Argument on Defendants' Motion for Partial Summary Judgment [Doc. No. 79], GRANTS Defendants' Motion for Leave to File Reply Brief in Excess of Page Limits [Doc. No. 77], GRANTS Plaintiff's Motion for Leave to File Supplemental Brief [Doc. No. 82], DENIES Plaintiff's Motion for Sanctions [Doc. No. 83], GRANTS Plaintiff's Motion for Leave to File Reply Brief Under Seal [Doc. No. 93]and DENIES Plaintiff's Motion for Class Certification [Doc. No. 86].